**Mabel BEDWELL, Plaintiff–Appellee,**

v.

**James BEDWELL and Sylvia Bedwell, Defendants–Appellants.**

Court of Appeals of Tennessee, Middle Section.

April 12, 1989.

Permission to Appeal Denied by Supreme Court Aug. 7, 1989.

Douglas Berry, Farmer, Berry & Purcell, P.C., Nashville, for defendants-appellants.

Dent Morris, Springfield, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

In this action, the chancellor "set aside" a deed wherein plaintiff transferred certain property to her son, James, and his wife, Sylvia, and observed: "The Court was convinced that the Plaintiff received nothing for the deed and was under a general cloud of misunderstanding at the time she executed it." For improvements upon the property by plaintiff's son a lien in the amount of $7,300.00 was awarded to defendants.

The chancellor, in evaluating the testimony of the witnesses, expressed "small confidence" in their statements "save for Joyce Kirby", the person who notarized the deed. Many pertinent facts are not disputed. Following the death of plaintiff's husband in February, 1982, plaintiff discussed with her son the transfer of the property in dispute which is slightly less than 4 acres. The deed was executed November 11, 1982 by the plaintiff and recorded on March 31, 1984. A provision in the deed provides the instrument is "not to be recorded until my death or I, Mable [sic] Bedwell, so specify in writing." Plaintiff and her son purchased a house for consideration of $3,000.00 which was moved and placed on the property. Apparently, plaintiff contributed $2,500.00 of the purchase price and her son $500.00, and the son expended additional moneys for improvements.

Plaintiff testified she was 72 at the time of trial,[1] and appeared to be confused or of limited memory, especially as to dates of the various transactions, *e.g.*, she testified she had a "third grade education" but also said she quit school in the eighth grade. She could read "some things" but not others. She had read the deed but did not understand it and she thought it was "a piece of paper that after I paid $400.00 that Glenn had borrowed from James before he passed away." She admitted no-one represented this to her at the time of signing the deed; she further testified that she tried to read the deed and only James was present but never told her that it was a deed. She "thought he would be as good as his word, that it wasn't [sic] nothing like a deed" but

---

1. She was approximately 66 years of age when her husband died and when she signed the deed. When she "discovered" the deed in 1984, she was 68 years of age.

James neither said it was nor was not a deed.

Plaintiff's personal physician testified plaintiff had visited his office on the day following the execution of the deed and based upon his clinical records "she was very depressed and very anxious". He added: "She had been on anti-depressants, which were having limited effectiveness, and also on tranquilizers. Her medication was changed at that time and she had had a little angina, but no more than usual." The doctor noted she gradually "came out of" the depression but observed it "was probably at its worst during that period of time", *i.e.*, November, 1982. Responding, the doctor concluded:

Q. Do you have an opinion based upon a reasonable degree of medical certainty as to Mrs. Bedwell's competency at that time, November 12, 1982?

A. Well, this is trying to remember back several years. Of course, I have no detailed psychological examination that was done or questions regarding her ability to function from a mental standpoint. I would certainly have some doubts as to her ability to function in an effective manner as far as handling her affairs. I had serious doubts at that time, and some at the present, but then she was in no state as I recall to really function.

Q. To transact business?

A. Or to transact business. No. She was very emotional.

■ Defendants argue that since the chancellor expressly found the deed was "executed with her knowledge" there was no basis in law or fact to set aside the deed. They rely on *Seat v. McWhirter*, 93 Tenn. 542, 29 S.W. 220 (1894), which said: "The law does not require that persons shall be able to dispose of their property with judgment and discretion in order to the validity of a conveyance. It is sufficient if they understand what they are about." *Id.*, at 569, 29 S.W. 220. Defendants argue plaintiff was not incompetent but lack of competency is not the issue. A party need not be declared incompetent to render a deed voidable. In this family squabble, where bias

and credibility were of significant concerns, we cannot say the evidence preponderates against the findings of the chancellor that plaintiff "was under a general cloud of misunderstanding at the time [of execution]" and executed the deed in "such confusion and mistake as to render her assent invalid".

In *Tennessee Consol. Coal Co. v. Layne et al.*, 26 Tenn.App. 635, 176 S.W.2d 369 (1943), this court said "each case of this character must be determined upon its own facts". *Id.*, at 638, 176 S.W.2d 369. Mental debility, not necessarily amounting to incompetency, may establish a basis for cancellation of a deed.

The chancellor's ruling suggests he felt plaintiff was confused and mistaken but not incompetent. He also concluded defendant was not guilty of any fraudulent misrepresentation. Fraud, however, is not essential to establish mistake, *Vakil v. Idnani*, 748 S.W.2d 196 (Tenn.App.1987), and we conclude the chancellor properly cancelled the deed in the exercise of sound, equitable discretion.

Defendants argue their lien should be in the amount of $18,254.00 and base this conclusion on the list of the values of improvements submitted in evidence and claimed to have been made by defendant. The list contained no invoices or other documentation of actual expenditures and of this exhibit the trial court said "were conjectures of value rather that [sic] actual payments by Mr. Bedwell". Essentially, defendants argue the exhibit was unrebutted and entered without objection thereby binding the trial court to the amount stated.

The evidence is disputed as to the existence of some of the alleged improvements and the trial court rejected the credibility of the witnesses testifying on this issue. In this connection, the Supreme Court has observed: "[I]f the witness relied upon to establish a given fact be discredited or impeached, that fact may not be treated as established as a matter of law or for purposes of a motion for peremptory instructions." *Frank v. Wright*, 140 Tenn. 535, 541, 205 S.W. 434 (1917). The evidence

does not preponderate against the amount established by the chancellor.

Finally, defendants argue the statute relating to post-judgment interest sets an absolute rate of 10 per cent, T.C.A. § 47–14–121. The chancellor set the interest rate at 7 per cent and gave as his reasons "the circumstances by which the improvements came about". The issue is whether, as a matter of equity, the chancellor can adjust the rate of post-judgment interest. The allowance of interest depends entirely upon statute. *Owens v. State,* 710 S.W.2d 518 (Tenn.1986). T.C.A. § 47–14–121, applicable to this case, provides: "Interest on judgments, including decrees, shall be computed at the effective rate of 10 percent (10%) per annum". The language is mandatory and it is generally held the rate of interest prescribed by statute is deemed controlling and not subject to reduction by reason of equitable considerations. 45 Am.Jur.2d, *Interest and Usury,* § 73; *also see Kaufman v. Kaufman,* 292 Ky 351, 166 S.W.2d 860 (1942). Moreover, equity follows the law. *Gibson's Suits in Chancery,* § 29 (Inman, 6th ed. 1982). Accordingly the decree of the chancellor will be modified to provide for 10 per cent post-judgment interest.

As to enforcement of the lien, the chancellor ordered:

If a small portion of the property might be subdivided and sold so as to gain the $7,300.00 for Mr. Bedwell then that should be done. If this is not easily accomplished then the lien shall continue upon the property until the demise of Mabel Bedwell or she makes a voluntary sale of some portion thereof for the purpose of obtaining funds for the payment of the lien. Mabel Bedwell may also extinguish the lien by making payment of sums aforesaid if she is able to do so.

Defendants' contend the foregoing, in effect, renders the lien unenforceable. We agree the lien and the conditions of enforceability are not properly delineated in the final decree. The cause is remanded to the chancery court to determine whether a portion of the property may be sold to satisfy the lien and, if not, a judgment for the lien will be entered in accordance with provisions of T.C.A. § 25–5–101 *et seq.*

The judgment of the trial court is affirmed as modified and the cause remanded with cost assessed in our discretion to appellants.

TODD, P.J., and CANTRELL, J., concur.