IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

July 13, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

AHMED MOAYED PERTEW,      ) C/A NO. 03A01-9711-CH-00505
                          )
        Plaintiff-Appellee, )
                          )
                          )
                          )
v.                        ) APPEAL AS OF RIGHT FROM THE
                          ) SULLIVAN COUNTY CHANCERY COURT
                          )
                          )
                          )
                          )
KATHLEEN RUTH MALONEY PERTEW, )
                          ) HONORABLE JOHN S. McLELLAN, III,
        Defendant-Appellant.) JUDGE


For Appellant                 For Appellee

KATHLEEN RUTH MALONEY PERTEW  AHMED MOAYED PERTEW
Pro Se                        Pro Se
East Norwich, New York        Leesburg, Virginia


O P I N I O N


AFFIRMED, AS MODIFIED
REMANDED                                    Susano, J.

These parties were divorced by judgment entered November 17, 1989. In 1996, they filed competing pleadings seeking various post-divorce relief. The trial court, following a hearing on April 15, 1997, granted a portion of the requested relief in an order entered October 6, 1997. Being dissatisfied with the trial court's order, Kathleen Ruth Maloney Pertew ("Wife") appeals, raising several issues. In order to reach these issues, it is necessary to review, in some detail, the pertinent procedural history of this case.

I. *Procedural History*

A. The Divorce

The divorce judgment awards Wife custody of the parties' minor children, Karim Moayed Pertew (DOB: October 15, 1980) and Tarek Ahmed Pertew (DOB: February 15, 1982). It directs that the jointly-owned marital residence be sold.[1] Wife and the children were awarded the exclusive use of the subject property pending the sale.[2] Ahmed Moayed Pertew ("Husband") was awarded "the three Raytheon accounts known as the Raytheon Savings and Investment Account, the Raytheon Share account and the Raytheon Single Life Pension Annuity account." The trial court made other decrees pertaining to the parties' marital property, none of which are relevant to the issues on this appeal.

_____

[1]The judgment does not dispose of any anticipated net proceeds because the court found "that there is no equity in [the] residence." In fact, the court directed that if the sales proceeds were *insufficient* to pay in full the liens against the property, any deficiency would be Husband's obligation.

[2]The trial court directed that if the house was not sold prior to December 18, 1989, the court would "make a determination of what is appropriate, *i.e.*, judicial sale and/or a further listing with a realtor."

2

The trial court established Husband's support obligations pending the sale of the residence. The court further addressed these obligations as follows:

> After the residence is sold beginning the first of the month next following the sale of the residence, the husband shall pay to the wife $500.00 alimony per month for five years. Thereafter, based upon the guidelines for Tennessee, finding the net income of the counter-defendant to be $3,542.00 and subtracting therefrom the $500.00 alimony and applying the guidelines to those tables, he shall pay as child support for two children $973.40. This shall be paid monthly and shall be paid at the first of each month beginning on the first month next following the closing of the sale of the residence. After five years, unless a substantial change of circumstances has caused the same to be reviewed otherwise, the court shall review the child support to determine that the same is in accord with the guidelines for support and in force and effect after five years.[3]

Husband was directed to "continue full hospitalization and medical and dental coverage as [had] been in force and effect for [Wife] and [the] children [prior to the divorce] for three years for [Wife] and...for the children throughout his obligation of support." Husband was burdened with certain specified debts, including a $1,200 obligation to American Express and a bill to Exxon in the amount of $138.40.

The divorce judgment further provides that Husband is to "pay reasonable moving expenses when the house is sold for the benefit of [Wife] and children."

---

[3]Neither party sought court review at or about the time of the expiration of the five-year period.

The divorce judgment contains a number of other provisions, the terms of which are not pertinent to the issues raised on this appeal.

In December, 1989, before the divorce judgment became final, each of the parties filed a pleading seeking specific relief with respect to that judgment. In her pleading, Wife also asked, in the alternative, for a new trial. As pertinent to the issues now before us, the trial court entered an order providing for the listing of the marital residence per the parties' agreement. It also modified the divorce judgment to provide that the debt to American Express was in the amount of $2,815.85 rather than the amount specified in the divorce judgment. The court's order -- which was entered January 30, 1990 -- also provides that "if [Husband] should advance funds to restore and/or repair the property pending a sale that the first funds received from a sale by the parties shall fully reimburse him to the extent such monies are advanced." Other relief requested by the parties was denied.

B. Earlier Post-Divorce Activity

In the fall of 1990, there was a flurry of activity in this case, some of which was directed at the issue of the sale of the marital residence. The parties' competing pleadings resulted in two orders, the first of which was entered on January 25, 1991. Among other things, that order provides that "any offer made for the sale of the house should be submitted to the Court, if reasonable, for the Court's adjudication as to whether it should be accepted." The second order was entered April 16,

4

1991. It approves Husband's offer to purchase Wife's interest in the marital residence. The April 16, 1991, order further provides that, as consideration for the purchase, Husband would pay to Wife $5,000 cash plus "the further consideration of extending the alimony payments of [$500] per month for an additional three...years after the five...year period of alimony payments [has] expired." Husband was to assume the first mortgage indebtedness of $148,000. Wife was given 30 days from the entry of the April 16, 1991, order to vacate the premises.

On June 3, 1991, Husband filed a petition in which he alleged that he had tendered $5,000 to Wife pursuant to the court's order of April 16, 1991, but that she had "refuse[d] to vacate the premises and [had] refuse[d] to deed the property" to him.

On June 10, 1991, the trial court entered an order, the validity of which Wife challenges on this appeal. That order finds Wife in contempt, based on her failure to vacate the marital residence. It stays the imposition of a ten-day jail sentence until July 1, 1991, and allows Wife an opportunity to purge herself of contempt by moving out of the marital residence by that date. It directs Husband to pay $5,000 into the registry of the trial court, said sum to be held pending inspection of the residence "to ensure no damage has been done" to the premises by Wife. The June 10, 1991, order describes the property by metes and bounds, divests Wife's interest in same, and vests that interest in Husband. As particularly pertinent to this appeal, the order ends with the signature of the trial judge but does not

5

contain any of the combinations of signatures and certificates required by Rule 58, Tenn.R.Civ.P.

Except for a petition by Husband that was filed on January 5, 1993, seeking a change of custody -- a request that was denied by the trial court on January 26, 1993 -- this case remained dormant until 1996.

### C. Current Controversy

The current round of litigation commenced on June 3, 1996, when Wife filed a pleading styled "Motion" in which she sought the following: a declaration that the June 10, 1991, order was "null and void" because of its failure to comply with Rule 58, Tenn.R.Civ.P.; a judgment for $5,000 "plus interest" for the payment ordered by the trial court in the challenged June 10, 1991, order; and a judgment for alimony arrearage in the amount of $48,000.

Wife's motion was met by Husband's answer and counterclaim of June 24, 1996. Among other things, the counterclaim seeks a credit against Husband's child support obligation for payments made by him for the support of his minor child, Karim, for a three-year period during which the child was residing with him.

On July 26, 1996, while the pleadings mentioned in the preceding paragraph were pending, Husband filed a motion alleging that Wife had agreed to furnish a quit claim deed to facilitate his sale of the former marital residence, but that she had

6

thereafter refused to do so.  He alleged that Wife's failure had frustrated his efforts to sell their former residence, which in turn had prevented him from closing on the purchase of a new house in Virginia.  He sought an order directing Wife to execute the quit claim deed.  He further asked for sanctions and his attorney's fees.

Wife responded to Husband's motion of July 26, 1996, by filing an answer in which she stated

> that there were discussions regarding the execution of a quit claim deed through her New York counsel, however, she was not privy to those discussions and cannot admit or deny the same.

She concluded her answer by pointing out

> that a hearing has been set for...August 16, 1996, and the issues set forth in this Motion and the issues in the Motion previously filed by [Wife] should be resolved at that time.

A hearing on August 2, 1996, resulted in an order entered August 6, 1996, directing Wife to "*instanter* sign the Quitclaim Deed faxed to her New York Attorney on June 27, 1996, at 3:00 p.m. and [to] immediately fax such signed Deed to her Attorney [in Tennessee] no later than...August 5, 1996."  On August 7, 1996, Husband filed a Motion for Contempt alleging that Wife had again refused to sign the deed.

On August 8, 1996, Wife's Tennessee attorney moved to withdraw as her counsel.  He also sought a continuance "until

7

such time as [Wife] obtains counsel." An order was signed and entered on August 8, 1996, permitting Wife's attorney to withdraw as her counsel of record and directing that Wife appear in court on August 16, 1996.

The August 16, 1996, hearing was held as scheduled. Wife did not attend, nor was she represented by counsel at that hearing. On August 30, 1996, an order was entered as to that hearing, finding Wife in contempt because of her failure to sign the quit claim deed. It directed her to pay $3,162, being the expenses incurred by Husband in connection with the failure of the sale of the former marital residence to close. The order further provided that Wife would not be entitled to any affirmative relief until the expenses were paid. It scheduled a hearing on Husband's counterclaim for October 11, 1996.

On August 30, 1996, Wife, through her new Tennessee counsel, filed a motion to set aside the order of August 6, 1996, which order had directed her to sign the quit claim deed, as well as the order of August 8, 1996, which had permitted her previous counsel to withdraw. Her motion was based upon an alleged lack of notice "under Rules 6.01 and 6.05, Tennessee Rules of Civil Procedure." On September 3, 1996, Wife filed another motion seeking

> a money judgment against Ahmed Pertew in a
> sum to be fixed and determined by the Court
> not to exceed $77,315.00 on account of
> Husband's above enumerated obligations to
> Wife for accrued alimony now due, child
> support arrearage, Wife's moving expenses,
> the children's medical and dental expenses
> Wife has incurred over and above the medical

8

                    insurance provided the children, the marital
                    debts which Husband was ordered to pay, and
                    for Wife's interest in the marital property
                    in the sum of $42,000.00.

She also asked for a modification of Husband's child support
obligation.

                    D.  Orders Appealed From

        The current controversy resulted in two orders, both of
which are before us on this appeal.  The first order was entered
January 24, 1997, following a hearing on December 13, 1996.  In
that order, the trial court refused to set aside the order of
August 6, 1996,[4] which directed Wife to *instanter* sign a quit
claim deed.  The court reserved all other issues, but it did
agree that Wife could seek affirmative relief even though she had
failed to pay Husband's expenses incurred by him in connection
with the failed closing.

        The last hearing in the court below was held on April
15, 1997.  The trial court filed its memorandum opinion on
September 4, 1997.  That opinion was incorporated by reference
into an order entered October 6, 1997.  In its order, the trial
court modified Husband's child support obligation by increasing
his monthly payment to $1,640 -- a decree not challenged on this
appeal.  As pertinent to the issues on this appeal, the trial
court rendered the following decrees:

_____

        [4]This order is incorrectly referred to in the order of January 24, 1997,
as "the order of this Court filed *June 10, 1991*."

                                9

1.  That Husband is entitled to a credit of $15,320 against the amount of child support due under the lower court's orders and that when Husband's payments of $59,484 are added to the credit, there is no child support arrearage due.

2.  That Wife is not entitled to receive any further division of the marital assets, other than the $5,000 payment due from Husband in connection with the court-approved sale of Wife's interest in the former marital residence to Husband.

3.  That Wife is entitled to an alimony arrearage of $13,612, but that interest on the arrearage will not commence until October 6, 1997, the date of the order awarding it.

4.  That Wife's motion to set aside certain orders of the trial court is not well taken and is denied.

5.  That Wife's claim for moving expenses to New York is denied.

6.  That only future unreimbursed medical expenses are to be divided on an equal basis.


II.  *Wife's Issues*


Wife raises issues that present the following questions for our review:


1.  Is Husband entitled to a credit of $15,320 against his child support obligation for the expenses incurred by him during the period August 1993 - August 1996 when his son, Karim, was living with him?

2.  Is Wife entitled to some portion of the net proceeds from Husband's sale of the former marital residence over and above the amounts awarded to her in the trial court's order of April 16, 1991?

3.  Is Wife entitled to an equitable share of Husband's Raytheon Pension and Savings Plan?

4.  Is Wife entitled to a judgment against Husband for $10,000 representing monies

10

allegedly expended by her to place the former marital residence in proper condition for sale?

5.  Should the trial court's orders of April 16, 1991, June 10, 1991, and August 30, 1996, be set aside?

6.  Is Wife entitled to be reimbursed by Husband for the minor children's uninsured medical expenses?

7.  Is Husband obligated to pay for the moving expenses of Wife and children to New York?

8.  Is Wife entitled to interest on any of the judgments awarded to her?

### III.  *Standard of Review*

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the preponderance of the evidence is otherwise.  Rule 13(d), T.R.A.P.; *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).  We also note that the trial court is in the best position to assess the credibility of the witnesses; therefore, such determinations are entitled to great weight on appeal.  *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn.App. 1995); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn.App. 1991).  In fact, we have previously noted that

...on an issue which hinges on witness credibility, [the trial court] will not be

11

> reversed unless, other than the oral
> testimony of the witnesses, there is found in
> the record clear, concrete and convincing
> evidence to the contrary.

**Tennessee Valley Kaolin Corp. v. Perry**, 526 S.W.2d 488, 490

(Tenn.App. 1974).


IV. *Analysis*


A. Credits Against Child Support


The trial court found that the parties' older child,

Karim, had lived with Husband from August, 1993, to August, 1996,

and that Wife "gave permission for [him] to reside with his

father." The evidence does not preponderate against this

finding. Husband testified that he provided all of Karim's

support during this three-year period. Wife disagrees, claiming

that monies she expended to travel to see her son while he lived

with his father and other expenditures should count as support

during this period. Our review of the record persuades us that

Husband contributed substantially all of Karim's support for

three years -- a finding implicitly made by the trial court.


The lower court concluded that Husband was entitled to

a credit of $15,320 against his support obligation, which

obligation, it must be remembered, was for *two* children. The

evidence does not preponderate against this finding. Under the

circumstances, Husband was entitled to the credit of $15,320, for

expenditures made for Karim's necessities that were not provided

by the child's custodian. **Duckett v. Duckett**, C/A No. 03A01-

9506-CV-00198, 1996 WL 57943 at *3 (Tenn.App., filed February 13,

12

1996); *Netherton v. Netherton*, C/A No. 01A01-9208-PB-00323, 1993 WL 49556 at *2 (Tenn.App., filed February 26, 1993); *Sutton v. Sutton*, C/A No. 180, 1991 WL 16234 at *1 (Tenn.App., filed February 12, 1991); *Oliver v. Oczkowicz*, C/A No. 89-396-II, 1990 WL 64534 at *2 (Tenn.App., filed May 18, 1990).

## B. Division of Property

Wife contends that she is entitled to additional monies in exchange for her interest in the former marital residence and that she should be awarded some part of Husband's interest in the Raytheon Pension and Savings Plan. We disagree.

In the divorce judgment of November 17, 1989, the trial court awarded Husband all of his accounts in the Raytheon Pension and Savings Plan. Wife's interest in the marital residence was fixed by the trial court's order of April 16, 1991. The latter order set Wife's entitlement as regards that property at $5,000 plus $18,000 additional alimony to be paid at the rate of $500 per month over a period of three years. Neither of these orders was appealed from; each represents a final order as to the division of the subject assets.

A division of property in a divorce case is not subject to modification after the judgment or order decreeing the division becomes final, absent some Rule 60.02, Tenn.R.Civ.P., basis for relief. *Towner v. Towner*, 858 S.W.2d 888, 889-90 (Tenn. 1993); *Vanatta v. Vanatta*, 701 S.W.2d 824, 827 (Tenn.App. 1985). In this case, the division with respect to the Raytheon accounts and the former marital residence was final long before

13

Wife sought to modify it.  Furthermore, Wife did not timely assert a Rule 60.02 ground for relief from the trial court's division.  The trial court was correct in denying her relief with respect to the division of these assets.

                    C.  Wife's Alleged Improvements
                        to Former Marital Residence

        Wife contends that she expended $10,000 on the former marital residence when she was occupying it with the children and that she is entitled to be reimbursed for these expenditures.  The trial court did not specifically address this claim.  Thus, we examine the record to see if the evidence preponderates against the trial court's tacit denial of Wife's claim.  *See* *Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn.App. 1984).

        Wife did not present any documentation to substantiate this claim.  Her claim rests solely on her oral testimony that she expended this sum to improve the property and thereby increase or maintain its value.  Husband counters this claim with his testimony that Wife left the premises in a less-than-ideal condition.

        Husband correctly points out that the trial court's order of January 30, 1990, only addresses *expenditures by him* and not those made by Wife.  If this were the only impediment to Wife's claim, we would be inclined to honor it; but the fact of the matter is that Wife's testimony on this subject, when considered in the light of Husband's testimony, is less than persuasive.  We cannot say that the evidence preponderates against the trial court's tacit denial of this claim.

14

_____D.  Should the Orders of April 16, 1991,
        June 10, 1991, and August 30, 1996, be Set Aside?


              1.  Order of April 16, 1991


        Wife seeks to set aside the trial court's order of

April 16, 1991 -- the order which approved Husband's offer to

purchase Wife's interest in the marital residence and which set

the consideration for same at $23,000.  She questions the order's

validity for the following reasons; because Husband failed to

comply with the order by paying $5,000 into court; because,

according to her, the order "has errors in computation"; because

the "order is without a certificate of service or a notice of

entry after it was filed"; because the order "was superseded by

the order of June 10, 1991"; and for another reason, the import

of which is unintelligible to the court.


        The order of April 16, 1991, is valid.  Husband's

failure to comply with the order does not vitiate its validity.

Furthermore, contrary to Wife's assertion, the order does not

reflect on its face any "errors in computation."  Also contrary

to Wife's claim, the order is signed by counsel for both parties

and even has a certificate in which the clerk of the trial court

certifies service of the order on Wife.  Finally, the order of

April 16, 1991, was not superseded by the June 10, 1991, order.

The latter order addressed Husband's petition seeking enforcement

of the April 16, 1991, order and a finding of contempt against

Wife for her failure to abide by the terms of the earlier order.


        Wife's attempt to set aside the order of April 16,

1991, is without merit.

16

## 2. Order of June 10, 1991

Wife also attempts to invalidate the June 10, 1991, order that found her in contempt, stayed same, and then divested and vested her interest in the marital residence. Without reciting in detail Wife's bases for challenging this order -- none of which appear to be sufficient in this case to set aside the challenged order -- the court observes that Wife's counsel stated to the trial court during the April 15, 1997, hearing, that "I'm not trying to set it aside, Judge." It is well-established that a party will not be permitted to take a position on appeal that is contrary to a position that he or she took at trial. *Clement v. Nichols*, 209 S.W.2d 23, 24 (Tenn. 1948); *Estate of Schultz v. Munford, Inc.*, 650 S.W.2d 37, 40 (Tenn.App. 1982). That is precisely what Wife is attempting to do in this case. We cannot permit this. This issue is found adverse to Wife.

## 3. Order of August 30, 1996

Wife also challenges the trial court's order of August 30, 1996, which, among other things, directed her to pay Husband's expenses of $3,162. These expenses were incurred in connection with the failed closing of Husband's sale of the former marital residence. That sale did not close because Wife failed to supply a quit claim deed as she had agreed to do through her New York attorney.

The trial court made specific factual findings with respect to the evidence presented at the hearing of August 16,

17

1996, which hearing led to the entry of the August 30, 1996, order:

> The Court further finds that as to defendant's Motion to Set Aside the Court's Order of August 30, 1996, that the defendant's attorney of record by fax dated August 8, 1996..., advised defendant to appear August 16, 1996, in court. Defendant's counsel was on his Motion relieved of representation of defendant on August 8, 1996, by the Court, after appearing on behalf of the defendant pursuant to Notice to appear on August 2, 1996, at which time defendant's attorney obtained a continuance of the matter to August 8, 1996. The Court further finds that the testimony of the defendant is not truthful and that her veracity has been successfully brought into issue by reason of inconsistency of defendant's testimony with that of her previous attorney, a member in good standing with the Kingsport Bar Association, as to the factual issues of when defendant testified she learned of her attorney's withdrawing from representation. The Court has also taken into consideration defendant's untruthful statement of her income on her 1994-1995 Income Tax Returns; her previous finding of contempt of the Orders of the Court in 1991 for her refusal to remove herself from the parties' marital property and, additionally, claiming the children for deduction purposes on her Income Tax Return contrary to order of this court; and notably, that she as an experienced litigator was present and was available to attend the scheduled hearing of August 16, 1996, if only for the purpose of requesting a continuance in order to be allowed time to obtain representation which defendant failed or refused to do which is an indication to this Court again of the defendant's combative and self-serving attitude which the Court observed during the hearing of this cause on April 15, 1997. In fact, the defendant met with her present counsel on August 20, 1996. Therefore, the Court denies the defendant's Motion to Set Aside the Court's Order of August 30, 1996, and the Court finds no justification in truth or in fact to relieve defendant of the obligation to pay to the plaintiff the sum of $3,162.00 relative to which there is no testimony in the record as to whether this sum of expenses is excessive

18

> or unreasonable; therefore, the Court finds
> defendant's Motion to Set Aside should be
> overruled.

The evidence does not preponderate against these factual findings. This is especially true in view of the trial court's credibility finding with respect to Wife -- "that the testimony of [Wife] is not truthful and that her veracity has been successfully brought into issue." The evidence in this case is clear that Wife knew that a hearing had been scheduled for August 16, 1996; that she was in the geographic area of the court at the time of the hearing; and that she made a conscious decision not to attend the hearing. Wife has only herself to blame for the adverse consequences visited upon her as a result of the August 16, 1996, hearing.

The testimony in the record is clear that Wife, through her New York counsel, agreed, prior to the closing, to execute a quit claim deed to memorialize the fact that she no longer had a legal interest in the former marital residence. When, at the last minute, she refused to do so and thereby caused the cancellation of the scheduled closing, the trial court acted appropriately in burdening her with Husband's expenses occasioned by the failed closing.[5]

There is no basis for setting aside the order of August 30, 1996.

### E. Children's Medical Expenses

---

[5]It matters not that Wife's interest in the property had previously been divested out of her. Husband apparently wanted a quit claim deed to facilitate his sale to another. Wife agreed to furnish the deed. When it was not forthcoming, the closing was canceled.

Wife offered proof of expenses incurred by her for the children's medical treatment. The trial court pointed out that the divorce judgment did not address medical expenses not covered by insurance. This is a correct interpretation of that document. Because of this omission, the trial court addressed the disposition of *future* uninsured medical expenses for the children, but refused to address *past* uninsured expenses, in effect, leaving them with the parent with whom the child was residing at the time the expense was incurred. This is a matter that addressed itself to the trial court's sound discretion. T.C.A. § 36-5-101(f)(1). We find no abuse of that discretion in this case.

F. Moving Expenses

Wife contends that she is entitled to a judgment against Husband for the expenses incurred by her in moving with her children to Norwich, New York. We disagree.

The divorce judgment provides that Husband "shall pay reasonable moving expenses when the house is sold." The trial court noted that Wife vacated the former marital residence in July, 1991, and moved to another location in Bristol. It was not until March, 1993, that Wife made her second move from her new residence in Bristol to New York.

The divorce judgment does not require Husband to pay for multiple moves. We agree with the trial court's

20

interpretation of the divorce judgment, *i.e.*, that only the first move is covered by its terms.

Wife's issue with respect to her moving expenses is without merit.

G. Interest

Wife seeks statutory, post-judgment interest of 10% on monetary awards made to her in the divorce judgment and in a 1991 order. The trial court held that interest on these various awards would not begin to accrue until "the date of entry of the [October 6, 1997, order]." Wife argues that post-judgment interest should be computed from the dates of the original awards rather than from the date of the last order of the trial court. She contends that the latter order simply restated previous awards or reduced to one amount a series of alimony payments that were past due under the terms of an earlier order.

T.C.A. § 47-14-122 provides as follows:

> Interest shall be computed on every judgment *from the day on which* the jury or *the court, sitting without a jury, returned the verdict* without regard to a motion for new trial.

(Emphasis added). Such interest "shall be computed at the effective rate of ten percent (10%) per annum, except as may be otherwise provided or permitted by statute." T.C.A. § 47-14-121. "The allowance of interest depends entirely upon statute."

21

*Bedwell v. Bedwell*, 774 S.W.2d 953, 956 (Tenn.App. 1989) (citing *Owens v. State*, 710 S.W.2d 518 (Tenn. 1986)).

In *Bedwell*, the trial court awarded post-judgment interest of 7%, citing, as a reason for the lower rate, "the circumstances" which led to the monetary award in that case. *Id.* at 956. On appeal, this court modified the lower court's judgment so as to provide for 10% post-judgment interest, noting that "[t]he language [of T.C.A. § 47-14-121] is mandatory and it is generally held [that] the rate of interest prescribed by statute is deemed controlling and not subject to reduction by reason of equitable considerations." *Id.*

Post-judgment interest accrues "from the date of the decree until paid." *Inman v. Inman*, 840 S.W.2d 927, 931 (Tenn.App. 1992). "[T]he right to interest on a judgment is statutory and the failure of any court to expressly provide such interest in its judgment does not abrogate the statute." *Id.* at 932.

In the case of *Price v. Price*, 472 S.W.2d 732 (Tenn. 1971), the Supreme Court quoted, with apparent approval, from 33 ALR 2d 1455 -- an article entitled "Right to Interest on Unpaid Alimony":

> In the greater number of cases dealing with
> the question, interest has been allowed on
> unpaid alimony. Thus, where the problem
> arose in respect of judgments for alimony in
> gross, interest has been allowed from the
> date payment was due under the judgment until
> payment was made, and, as to unpaid

22

> instalments, interest has been allowed from
> the date the particular instalment matured.
> Likewise, interest has been allowed on unpaid
> instalments of alimony against the estate of
> a deceased divorced spouse. The theory upon
> which interest is allowed in these cases is
> that a judgment awarding alimony is in the
> nature of a money judgment. The same result
> has been reached even where the judgment or
> instalment became due and payable pending an
> appeal of the judgment awarding the alimony,
> on the theory that the party awarded alimony
> should not be deprived of it by the
> prosecution of an appeal.

*Id*. at 734.

Based on the foregoing authorities, we believe the trial court in the instant case erred in decreeing that interest on Wife's $5,000 judgment and alimony arrearage would not begin to accrue until October 6, 1997. We find and hold that these awards were made in an order that became final in 1991. It is to that earlier order that we must look to determine the interest accrual date of the $5,000 award and the alimony award.

Wife is entitled, as a matter of law, to interest at the rate of 10% per annum, without compounding, on the judgment that first awarded her $5,000. That judgment was entered June 10, 1991. Since that order had the effect of divesting Wife of her interest in the former marital residence, Husband should have paid $5,000 into the registry of the court as of that date. This is what he was directed to do in the June 10, 1991, order. Had he done so, he would have prevented any interest from accruing on the $5,000 award. He cannot rely on his partial tender[6] to

---

[6] Husband sent Wife's attorney a check for $3,000.

23

Wife's attorney.  He should have made his payment -- in the full amount -- directly to the registry of the court as he was directed to do.  Furthermore, his partial tender was conditional.  The condition -- a claimed credit of $2,000 for some tools that he was awarded in the divorce judgment but allegedly did not receive -- was later rejected by the trial court.  Wife cannot be faulted for refusing to accept Husband's conditional partial tender.  That tender did not have the effect of stopping the accrual of interest.

Wife's alimony award was a judgment; but since it was payable in installments, interest does not accrue on any given installment until the due date of the payment.  *See* **West American Insurance Co. v. Montgomery**, 861 S.W.2d 230, 232 (Tenn. 1993).  Hence each installment accrues interest at the rate of 10% from the due date of the payment, again as a matter of law.  This is simple interest without compounding.  The trial court determined that there was an arrearage of $13,612 through April 1, 1997.  This represents 27 payments at $500 each and one payment of $112.  Logically, the payment of $112 is the oldest one due.  Going backwards, it was due January 1, 1995, and accrues simple interest at the rate of 10% per annum from that date until paid.  Each award of alimony of $500 accrues interest at the rate of 10% per annum from its due date, again until paid.  For example, $500 was due February 1, 1995, $500 was due March 1, 1995; and, going forward, each additional $500 payment was due on the first day of the next succeeding 25 months.

There is no credible evidence that any of the alimony due prior to January 1, 1995, was not timely paid. Therefore, Wife is not entitled to any interest on payments due prior to that date.

The trial court determined that Husband had effectively paid all of the child support due under prior orders of that court. The evidence does not preponderate against this finding. There is no credible evidence that Husband failed to make these payments in other than a timely fashion. Therefore, Wife's claim that she is entitled to post-judgment interest on child support payments is without merit.

The trial court did award Wife child support at a new rate, *i.e.*, $1,640 per month, retroactive to October, 1996; but this award was first reduced to judgment in the order of October 6, 1997. Therefore, interest on this award for any period of time prior to October 6, 1997, would be in the nature of pre-judgment interest. An award of such interest is discretionary with the trial court. *See* T.C.A. § 47-14-123. *See also **Kirksey v. Overton Pub, Inc**.*, 804 S.W.2d 68, 73 (Tenn.App. 1990). We find no abuse of discretion in the trial court's tacit refusal to award pre-judgment interest in this case.

In its order of October 6, 1997, the trial court awarded Wife a judgment for $2,954.25, being the total of the obligations to Exxon and American Express, which obligations, Husband was ordered to pay in the divorce judgment. The trial court decreed that this award would bear interest from and after

25

the October 6, 1997, order. We believe this was appropriate. The divorce judgment did not order Husband to pay Wife the amounts of these bills; that judgment simply ordered him to pay the creditors. The first judgment awarding Wife monies with respect to these bills was the trial court's order of October 6, 1997. Any interest on this award prior to that date would be in the nature of pre-judgment interest. The trial court did not abuse its discretion in failing to award such interest with respect to these bills. This is especially true in view of the fact that Wife's testimony was somewhat contradictory as to if and when she paid these bills, and, if so, whether she paid all or only part of them. Despite the less-than-definite nature of this testimony, the trial court apparently found that Wife did pay these two bills, and this finding is not challenged on this appeal; but the ambiguous nature of Wife's testimony is justification enough for the trial court's decision not to award pre-judgment interest.

In fairness to Husband -- even though he has not raised the matter on appeal -- we would point out that he is entitled to post-judgment interest on the judgment of $3,162 awarded to him in the trial court's order of August 30, 1996; to quote a well-known saying, "what's good for the goose, is good for the gander."

If the parties cannot agree on the interest due pursuant to this opinion, the trial court will make this determination.

26

V.  *Conclusion*


The judgment of the trial court, as modified, is affirmed.  Exercising our discretion, we tax the costs on appeal 75% to the appellant and 25% to the appellee.  This case is remanded for such further proceedings, if any, as may be required, consistent with this opinion, and for the collection of costs assessed below, all pursuant to applicable law.


_____
Charles D. Susano, Jr., J.


CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.

27