IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 24, 1999 Session

## DORIS MAE PARKS SANDERS v. SAMUEL BOONE SANDERS, JR.

Appeal from the Circuit Court for Davidson County
No. 87D-2916    Marietta M. Shipley, Judge

No. M1998-00978-COA-R3-CV - Filed December 28, 2001

This appeal involves a former spouse's right to post-judgment interest on an award of alimony in solido. After her former husband failed to pay the alimony in solido required by the final divorce decree, the former wife filed a petition in the Circuit Court for Davidson County seeking $9,847.68 in post-judgment interest. The trial court recognized that the post-judgment interest had accrued but decided not to award the interest to the former wife unless her former husband failed to make his future periodic alimony payments in a timely manner. When her former husband began to pay his alimony payments late, the former wife renewed her request for the post-judgment interest. The trial court found that the former husband had been delinquent in his alimony payments but again declined to order the former husband to pay the post-judgment interest if he prepaid the remaining balance of his periodic alimony. The former wife has appealed from the trial court's repeated refusal to award her the post-judgment interest on her alimony in solido award. We have determined that the former wife was entitled to post-judgment interest as a matter of law and, therefore, that the trial court erred by failing to award her $9,847.68 for post-judgment interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which DAVID R. FARMER and PATRICIA J. COTTRELL, JJ., joined.

Dot Dobbins, Nashville, Tennessee, for the appellant, Doris Mae Parks Sanders.

Larry D. Ashwood and Peter D. Heil, Nashville, Tennessee, for the appellee, Samuel Boone Sanders, Jr.

### OPINION

### I.

Doris Mae Parks Sanders and Samuel Boone Sanders, Jr. were married in 1964. Their marriage ended in 1987 when Ms. Sanders filed a complaint for a bed and board divorce in the Probate Court for Davidson County. Mr. Sanders thereafter filed a counterclaim for an absolute divorce on the ground of irreconcilable differences. Thereafter, on January 16, 1989, the parties executed a marital dissolution agreement in which they agreed that Mr. Sanders would obtain a

divorce on the ground of irreconcilable differences. Pertinent to this case, they also agreed that Mr. Sanders would pay Ms. Sanders $60,000 in alimony in solido "[w]ithin ten days of the date of the Final Decree of Divorce." The parties also agreed that Mr. Sanders would pay Ms. Sanders $2,000 per month in periodic alimony for ten years. On January 20, 1989, the trial court entered a final divorce decree approving and incorporating the parties' marital dissolution agreement.

Mr. Sanders did not pay the $60,000 in alimony in solido to Ms. Sanders by January 30, 1989. In fact, by October 1989, he had only paid Ms. Sanders $10,000. On October 27, 1989, the parties entered an agreed order in which Mr. Sanders agreed to pay Ms. Sanders $10,000 immediately and the remaining $40,000 of the alimony in solido by February 15, 1990. Ms. Sanders also received $5,000 in post-judgment interest on the $50,000 balance of unpaid alimony in solido. Mr. Sanders paid Ms. Sanders the $10,000 and eventually paid her the $5,000 in post-judgment interest. However, February 15, 1990 came and went without the payment of the remaining $40,000.

On October 29, 1990, Ms. Sanders filed a petition seeking to hold Mr. Sanders in contempt for paying her only $4,000 of the remaining $40,000 balance of the alimony in solido award. This petition prompted Mr. Sanders to pay Ms. Sanders another $20,000, leaving $16,000 in alimony in solido outstanding. Mr. Sanders also requested the trial court to relieve him of any further support obligations. The trial court referred the dispute to a special master who concluded that Mr. Sanders still owed Ms. Sanders $16,000 in alimony in solido and that Mr. Sanders was $42,000 in arrears on his periodic alimony obligation. On December 4, 1992, the trial court confirmed the special master's report but, at least as far as this record shows, did not enter any orders regarding the arrearage in both alimony in solido and periodic alimony. Thus, Ms. Sanders's October 1990 contempt petition remained unresolved.

The parties continued to joust over the division of their marital property, Mr. Sanders's refusal to pay his periodic alimony on time, and the post-judgment interest on the unpaid alimony in solido, periodic alimony, and funds due as part of the division of marital property. On July 25, 1996, after Mr. Sanders paid part of these obligations, including the $16,000 outstanding balance of the alimony in solido, Ms. Sanders filed a motion requesting the trial court to award her post-judgment interest on the unpaid alimony in solido, periodic alimony, and marital property. She also requested that the trial court order Mr. Sanders to file a cash bond to secure his future periodic alimony payments.

The trial court conducted a hearing in August 1996, and on September 9, 1996, filed an order directing Mr. Sanders to pay off his current periodic alimony arrearage and to pay Ms. Sanders $500 for her legal expenses. After finding that the post-judgment interest on the unpaid alimony in solido was $9,847.68, the trial court declined to order Mr. Sanders to pay this interest. Instead, the court ordered that "if Mr. Sanders fails to make a periodic alimony payment in the future by the fifth (5th) day of the month in which it is due, then a judgment in the amount of $9,847.68 shall be entered against Mr. Sanders in favor of Ms. Sanders, for which immediate execution shall issue." The trial court also expressly reserved ordering Mr. Sanders to post a cash bond to secure his future periodic alimony payments.

In June 1998, Ms. Sanders filed yet another motion seeking payment of the post judgment interest on the alimony in solido because Mr. Sanders had not made three of his periodic alimony payments by the fifth day of the month in which they were due. Mr. Sanders responded attributing the timing of the disputed payments to "confusion" stemming from the fact that he and Ms. Sanders could only communicate using their adult daughters as intermediaries. He also asserted that the September 9, 1996 order was a "trap . . . that was easily manipulated by the plaintiff." Following a hearing on July 31, 1998, the trial court directed Mr. Sanders to deposit his periodic support payments directly into Ms. Sanders's bank account by the first day of each month and took the matter of the post-judgment interest under advisement.

On October 15, 1998, Ms. Sanders renewed her unresolved motion for an order directing Mr. Sanders to pay her the $9,847.68 in post-judgment interest that had accrued on the alimony in solido before it was eventually paid. Rather than awarding the post-judgment interest, the trial court decided to use it to induce Mr. Sanders to pre-pay the remainder of his periodic alimony obligation. Accordingly, in its November 17, 1998 order, the trial court stated:

> if Mr. Sanders prepaid all the periodic alimony due under the final decree, then the Court would not require Mr. Sanders to make the interest payments on the alimony *in solido* award which were previously set out in the Masters [sic] report . . . which was confirmed by court order on December 4, 1992; the Court further found that because Mr. Sanders did not make the periodic alimony payments in a timely manner as previously ordered by the Court, that Mr. Sanders should pay the attorney fees incurred by Ms. Sanders in this matter as set out in the affidavit tendered by her counsel.

Ms. Sanders has appealed from the trial court's refusal to award her the post-judgment interest that had accrued on the alimony in solido award before Mr. Sanders finally paid it.[1] Before we address this issue, we must first take up two preliminary matters.

## II.
### THE TIMELINESS OF MS. SANDERS'S NOTICE OF APPEAL

Mr. Sanders insists that Ms. Sanders filed her notice of appeal too late because she did not file it within thirty days after the entry of the trial court's September 9, 1996 order. We have determined that the entry of the September 9, 1996 order did not trigger the running of time for filing a notice of appeal because it did not resolve all the claims between all the parties and, therefore, was not a final, appealable judgment for the purpose of Tenn. R. App. P. 4(a).

---

[1]Even though Ms. Sanders requested the trial court to award her post-judgment interest on Mr. Sanders's delinquent periodic alimony payments, she has not taken issue on this appeal with the trial court's denial of her request. Accordingly, we will not address the trial court's refusal to grant Ms. Sanders's request for post-judgment interest on the unpaid periodic alimony because Ms. Sanders has waived her right to raise this issue.

With several exceptions not applicable here, parties are entitled to an appeal as of right to this court only from a final judgment. Tenn. R. App. P. 3(a). A final judgment is a judgment that fully adjudicates all the claims between all the parties. Tenn. R. App. P. 3(a); *Aetna Cas. & Sur. Co. v. Miller*, 491 S.W.2d 85, 86 (Tenn. 1973); *Wilson v. Wilson*, 58 S.W.3d 718, 725 (Tenn. Ct. App. 2001); *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 n.4 (Tenn. Ct. App. 1996). It leaves nothing else for the trial court to resolve. *Hoalcraft v. Smithson*, 19 S.W.3d 822, 827 (Tenn. Ct. App. 1999); *Vineyard v. Vineyard*, 26 Tenn. App. 232, 241, 170 S.W.2d 917, 920 (1942). Until a judgment becomes final, it remains within the trial court's control and may be modified any time prior to the entry of a final judgment. *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 328 (Tenn. 1982); *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997).

The September 9, 1996 order, by its own language, did not resolve all of the issues between the parties. It specifically reserved Ms. Sanders's request for post-judgment interest and a bond to assure Mr. Sanders's timely payment of the periodic alimony. Because the order was not final and appealable, Ms. Sanders was under no obligation to file a notice of appeal. Ms. Sanders's obligation to file a notice of appeal did not arise until the entry of the November 17, 1998 judgment that finally and fully resolved all the claims between all the parties. Accordingly, we conclude that the notice of appeal that Ms. Sanders filed on December 17, 1998 was timely.

### III.
#### SUFFICIENCY OF THE RECORD ON APPEAL

Mr. Sanders also complains about the adequacy of the appellate record. He asserts that Ms. Sanders's decision not to file verbatim transcripts of the proceedings in the trial court renders the record inadequate with regard to the issues being raised on this appeal. However, Mr. Sanders did not take advantage of any of his prerogatives to supplement the record. Accordingly, he must share the responsibility with Ms. Sanders for the shortcomings in the record, if indeed there are any.

The Tennessee Rules of Appellate Procedure require the parties, not the appellate courts, to provide a record on appeal that contains a "fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal." Tenn. R. App. P. 24(a); *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 607 (Tenn. 1999). Tenn. R. App. P. 24(a) places the initial responsibility for selecting the contents of the appellate record on the appellant; however, it permits the appellant to designate less than a complete record if a complete record will not be needed to consider the issues the appellant intends to raise on appeal. If the appellant designates less than a complete record, Tenn. R. App. P. 24(a) permits the appellee to designate other parts of the record for inclusion in the record on appeal if the appellee decides that the record designated by the appellant is incomplete.

On March 15, 1999, Ms. Sanders filed a notice stating that she did not intend to file a transcript or statement of the evidence and designating the motions, orders, and other documents for inclusion in the appellate record. The record contains no indication that Mr. Sanders ever exercised his prerogative under Tenn. R. App. P. 24(a), (b), or (c) to designate other portions of the record or to provide a transcript or statement of the evidence. Instead, he struck at Ms. Sanders's jugular by requesting this court to dismiss her appeal because she had not filed these designations within fifteen

days of the filing of her notice of appeal. After this court denied his motion, Mr. Sanders still made no effort to have included in the record any of the materials he had been protesting should have been included in the record.

Mr. Sanders renews his complaints about the inadequacy of the record in his brief. We have little sympathy with his arguments for two reasons. First, he could have cured any perceived inadequacy in the record simply by requesting the trial court clerk to include in the appellate record any other portions of the record that had not been designated by Ms. Sanders or by providing the transcripts or statements of the evidence he deemed so important. Because Mr. Sanders failed to take the actions reasonably available to him to complete the record to his satisfaction, Tenn. R. App. P. 36(a) prevents him from now taking issue with the completeness of the record.

The second reason why we are not swayed by Mr. Sanders's complaints is that a transcript or statement of the evidence is unnecessary in this case. The question of whether a party is entitled to post-judgment interest is a question of law. *Vooys v. Turner*, 49 S.W.3d 318, 321 (Tenn. Ct. App. 2001). The pleadings and other papers included in the existing record contain the information necessary to address Ms. Sanders's claim that she is entitled to post-judgment interest on Mr. Sanders's unpaid alimony in solido. Accordingly, a transcript or statement of the evidence is entirely unnecessary in this case.

## IV.
### MS. SANDERS'S RIGHT TO POST-JUDGMENT INTEREST

We now turn to Ms. Sanders's assertion that the trial court erred by declining to award her post-judgement interest. Other than his complaints regarding the adequacy of the record, Mr. Sanders argues that Ms. Sanders is not entitled to post-judgment interest because the condition in the trial court's September 9, 1996 order triggering his obligation to pay the accrued post-judgment interest never occurred, and because the parties agreed to forego the payment of prejudgment interest on May 31, 1995. We have determined (1) that Ms. Sanders was entitled to post-judgment interest on the unpaid alimony in solido as a matter of law, (2) that the trial court erred by undertaking to use Mr. Sanders's accrued post-judgment interest obligation as leverage to assure his compliance with other parts of the marital dissolution agreement,[2] and (3) that Mr. Sanders cannot now assert that Ms. Sanders excused him from paying post-judgment interest because he did not raise this defense in the trial court.

### A.

A party's right to post-judgment interest is based on its entitlement to the use of the proceeds of a judgment. *West Am. Ins. Co. v. Montgomery*, 861 S.W.2d 230, 232 (Tenn. 1993); *Vooys v. Turner*, 49 S.W.3d at 322. The purpose of post-judgment interest is to compensate a successful plaintiff for being deprived of the compensation for its loss between the time of the entry of the judgment awarding the compensation until the payment of the judgment by the defendant. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36, 110 S. Ct. 1570, 1576 (1990).

---

[2]This same trial court has tried this strategy before without success. *Vooys v. Turner*, 49 S.W.3d at 320.

Accordingly, a party who enjoys the use of funds that should have been paid over to another party should pay interest on the retained funds. *Lucius v. City of Memphis*, 925 S.W.2d 522, 526 (Tenn. 1996); *Stinnett v. Stinnett*, No. E2000-00121-COA-R3-CV, 2000 WL 1273880, at \*4 (Tenn. Ct. App. Sept. 7, 2000) (No Tenn. R. App. P. 11 application filed).

The right to post-judgment interest is entirely statutory. *Owens v. State*, 710 S.W.2d 518, 518-19 (Tenn. 1986); *Bedwell v. Bedwell*, 774 S.W.2d 953, 956 (Tenn. Ct. App. 1989). Tenn. Code Ann. § 47-14-122 (2001) succinctly provides: "Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial." Because this statute is plainly mandatory, *Vooys v. Turner*, 49 S.W.3d at 322; *Inman v. Inman*, 840 S.W.2d 927, 932 (Tenn. Ct. App. 1992); *Bedwell v. Bedwell*, 774 S.W.2d at 956, we have held that trial courts are not free to ignore it. *Stinnett v. Stinnett*, 2000 WL 1273880, at \*4.

Post-judgment interest begins to accrue from the date of the entry of the judgment. *Pertew v. Pertew*, No. 03A01-9711-CH-00505, 1999 WL 486917, at \*10 (Tenn. Ct. App. July 13, 1999) (No Tenn. R. App. P. 11 application filed); *Inman v. Inman*, 840 S.W.2d at 932. The obligation to pay post-judgment interest applies to spousal support obligations, but when a decree provides for the periodic payment of spousal support, post-judgment interest does not begin to accrue until each obligation to pay support actually matures. *Price v. Price*, 225 Tenn. 539, 544-45, 472 S.W.2d 732, 734 (1971). The failure of a judgment or decree to specify post-judgment interest does not abrogate the obligation in Tenn. Code Ann. § 47-14-122 to pay post-judgment interest. *Inman v. Inman*, 840 S.W.2d at 932.

**B.**

The parties' final divorce decree entered on January 20, 1989 required Mr. Sanders to pay Ms. Sanders $60,000 in alimony in solido by January 30, 1989. When January 30, 1989 came and went, Mr. Sanders's obligation to pay ten percent post-judgment interest to Ms. Sanders on the full $60,000 judgment matured. The total amount of the matured obligation was reduced to $50,000 on April 10, 1989, when Mr. Sanders paid Ms. Sanders $10,000; however, from and after that date, post-judgment continued to accrue on the remaining $50,000. Mr. Sanders paid another $10,000 on October 27, 1989, thereby reducing the balance to $40,000. On September 29, 1990, Mr. Sanders paid another $4,000 which was followed by a $20,000 payment on November 20, 1990. Thus, as of November 20, 1990, Mr. Sanders still owed Ms. Sanders $16,000 of the alimony in solido he had agreed to pay by no later than January 30, 1989.

Mr. Sanders continued to refuse to pay the balance of the alimony in solido. On November 19, 1992, almost four years after the original deadline for paying the alimony in solido, a special master concluded that Mr. Sanders owed $7,193.40 in post-judgment interest. With the parties' approval, the trial court confirmed the special master's report but, for some reason, declined to order Mr. Sanders to pay this accrued post-judgment interest to Ms. Sanders. Sometime in mid-1995, Mr.

Sanders paid the remaining $16,000 balance on his alimony in solido obligation but declined to pay the $9,847.68 in post-judgment interest that had accrued by that time.[3]

The $9,847.68 in post-judgment interest was a mandatory obligation of Mr. Sanders barring some other agreement between the parties or some sort of accord and satisfaction whereby Ms. Sanders accepted some other amount to completely discharge the debt. Accordingly, the trial court erred in both its September 9, 1996 order and its November 17, 1998 order by undertaking to threaten the enforcement of this debt to induce Mr. Sanders to pay his periodic alimony on time or to prepay the balance of his periodic alimony. In its September 9, 1996 order, the trial court should have simply given Ms. Sanders a judgment for the $9,847.68 in accrued post-judgment interest along with the right to execute on this judgment.[4]

## C.

Mr. Sanders argues that the record supports a conclusion that on May 31, 1995, he and Ms. Sanders agreed to release him from his obligation to pay the $9,847.68 in accrued post-judgment interest. Mr. Sanders is not the first delinquent spouse to assert this sort of defense. He is also not the first delinquent spouse to fail to carry his burden of proof. *See Stinnett v. Stinnett*, 2000 WL 1273880, at *5-6.

The defense of accord and satisfaction is an affirmative defense, and the burden of proving this defense rests squarely on the party asserting it. *Inland Equip. Co. v. Tennessee Foundry & Mach. Co.*, 192 Tenn. 548, 551, 241 S.W.2d 564, 565 (1951); *R.J. Betterton Mgt. Servs., Inc. v. Whittemore,* 733 S.W.2d 880, 882 (Tenn. Ct. App. 1987). To make out an accord and satisfaction defense, the party asserting it must demonstrate that a creditor has agreed to accept a compromise amount, in complete satisfaction of a claim. *Stuermer v. City of Chattanooga*, 914 S.W.2d 917, 921 (Tenn. Ct. App. 1995). To constitute an enforceable accord and satisfaction, it is essential (1) that the tendered consideration be offered to extinguish the original obligation, (2) that the debtor intend the tendered consideration as complete satisfaction for the original obligation, (3) that the debtor's intent be made known to the creditor, and (4) that the creditor accepts the tendered consideration with the understanding that it completely satisfies the original obligation. *Lindsey v. Lindsey*, 930 S.W.2d 553, 556-57 (Tenn. Ct. App. 1996).

---

[3] The trial court found as a fact that the amount of post-judgment interest that had accrued between January 30, 1989 and the time that Mr. Sanders made his final alimony in solido payment was $9,847.68. We have been unable to reproduce this calculation. However, neither party has challenged this calculation. Because the evidence in the record does not preponderate otherwise, we conclude that the amount of post-judgment interest accrued on Mr. Sanders's $60,000 alimony in solido obligation between January 30, 1989 and the date of the final payment of alimony in solido amounted to $9,847.68.

[4] This conclusion renders moot Mr. Sanders's argument that the evidence does not support the trial court's later findings that he had triggered the provision in the September 9, 1996 order obligating him to pay the accrued post-judgment interest if he failed to pay his periodic alimony by the fifth day of the month in which it became due. This provision of the September 9, 1996 order is a legal nullity because, by September 9, 1996, Mr. Sanders had a matured obligation by operation of law to pay Ms. Sanders $9,847.68 in post-judgment interest. Accordingly, whether Mr. Sanders's October 1996, June, 1997, and January 1998 payments were late is irrelevant.

The record before us does not indicate that Mr. Sanders ever asserted an accord and satisfaction defense in the trial court. This alone is sufficient to undermine this theory on appeal because we do not permit parties to raises defenses on appeal that were not first raised in the trial court. *Norton v. McCaskill*, 12 S.W.3d 789, 795 (Tenn. 2000); *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Devorak v. Patterson*, 907 S.W.2d 815, 818 (Tenn. Ct. App. 1995).

However, even if Mr. Sanders's failure to assert this defense in the trial court was not his undoing, his accord and satisfaction defense would fail because he has not made out all the elements of the defense by a preponderance of the evidence. The slender thread by which his argument hangs consists of a statement in a motion Ms. Sanders filed on July 25, 1996 that "a Petition for Contempt is pending herein in that the parties negotiated a partial settlement through their attorneys on May 31, 1995, at which time the case was continued." Mr. Sanders now posits that this "partial settlement" might have included the parties' agreement that Ms. Sanders agreed to forego any claims for post-judgment interest in return for his agreement to pay other disputed amounts.

Mr. Sanders, as the party asserting the accord and satisfaction defense, was obligated to provide this court with a record containing evidence substantiating this defense. The mere allusion to a "partial settlement" in one of Ms. Sanders's motions hardly supplies this evidence. We have examined the remainder of the record and find no other evidence that could support a claim that there was some sort of accord and satisfaction between the parties on May 31, 1995. Accordingly, Mr. Sanders's belated accord and satisfaction defense fails for the additional reason that there is no evidence to support it.

## V.

We reverse the order denying Ms. Sanders's motion for post-judgment interest and remand the case to the trial court with directions to enter a judgment awarding Ms. Sanders $9,847.68 for post-judgment interest plus an amount for the legal expenses she incurred on this appeal. This judgment should require Mr. Sanders to pay the judgment within thirty days after its entry and should provide Ms. Sanders with the right of execution if Mr. Sanders does not pay the judgment in a timely manner. We also tax the costs of this appeal to Samuel Boone Sanders, Jr. for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

-8-