James W. NEWMAN, Plaintiff-Appellee,

v.

ALUMINUM COMPANY OF AMERICA, Defendant-Appellant.

Court of Appeals of Tennessee, Eastern Section.

Sept. 8, 1982.

Permission to Appeal Denied by Supreme Court Dec. 13, 1982.

James A. Ridley, III, Knoxville (Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, of counsel), for defendant-appellant.

Rom Meares, Jr., of Meares & Meares, P.C., Maryville, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

Defendant appeals a judgment in favor of its employee in the amount of $56,435.80, based on medical expenses incurred by the employee as a result of a serious, non-work related, motor vehicle accident, which the trial judge determined were payable under the terms of a group insurance policy.[1]

Defendant contends the medical and hospital expenses incurred by the employee fall within an exclusion in the policy, which provides:

> No ... [medical expenses] benefits shall be payable ... for the following:
>
> .   .   .   .   .
>
> e. Services for which payment or reimbursement is received by or for the account of the individual as a result of a legal action or settlement.

Plaintiff entered a settlement with the third party tort feasor and defendant insists the settlement relieves defendant of any liability. Plaintiff counters that the settlement agreement clearly preserves plaintiff's right to these benefits as the settlement agreement expressly excluded medical expenses. In pertinent part, the settlement agreement provides:

> WHEREAS, James W. Newman may have to repay the Aluminum Company of America if he receives any funds for medical expenses, and *the parties hereto are desirous of guaranteeing that any funds paid hereunder will be designated in such a way as to avoid any requirement of repaying medical benefits* which James W. Newman might otherwise have to repay to the Aluminum Company of America; and
>
> WHEREAS, James W. Newman has voluntarily dismissed his suit for medical expenses and relinquishes any claim for medical expenses against Newman & Pemberton Corporation and Duane W. Rolen; ... [Emphasis supplied.]

And further provides:

> James W. Newman, for himself, his heirs, assigns, executors, and administrators, *forever releases and discharges* Newman & Pemberton Corporation and Duane W. Rolen, together with and including all of their agents, assigns, successors, and insurers, *from any and all claims, demands, and actions* which James W. Newman now has or which may hereafter ever arise because of personal injuries, both known and unknown, *including all present and future* developments therefrom, *medical and hospital expenses, both incurred and future,* loss of wages and impaired income, and all other expenses and losses of any kind or character which relate to or *which in any way result from the accident of July 16, 1979.* [Emphasis supplied.]

---

1. The contractual provisions are in policy form and an insurance company administers the plan for defendant's employees on the behalf of defendant. The employer pays all benefits rather than the administrator, insurance company.

The settlement is a so-called structured settlement with Newman being paid $40,-000.00 and another debt of $3,500.00 at the time of the release. Subsequently, the employee or his heirs are guaranteed $1,916.67 per month for a period of 20 years or the duration of his life, whichever is longer. Newman or his heirs are also to receive lump sums to be paid in 1985, 1995 and 2000, totalling $400,000.00. Under a separate agreement, Newman's attorney was paid a fee for his services.

The trial judge concluded the employee did not receive payment for his medical expenses from the third party and entered judgment in favor of the employee for the medical expenses incurred by reason of the accident.

■ While this action was filed in the law court, the trial judge in trying the issue was proceeding as a court of equity. *See Gibson Co. Elec. Mem. Corp. v. Hall,* 32 Tenn.App. 394, 222 S.W.2d 689 (1947).

■ We conclude that plaintiff, by executing a release for the stated consideration, received "payment" for his medical expenses as "a result" of the "settlement". A principal element of damages in a personal injury action is the value of medical services. 22 Am.Jur.2d, *Damages,* § 102 at 149. Plaintiff dismissed his claim for medical expenses from his lawsuit[2] and the release expresses, in effect, that the consideration for the release does not cover medical expenses; however, the release is couched in verbiage of a general release covering all claims between the parties, including medical expenses.

As a general rule, the scope and extent of release depends upon the intent of the parties as expressed in the instrument. *Cross v. Earls,* 517 S.W.2d 751 (Tenn.1974).

Equity looks to the intent rather than the form. *Gibson's Suits in Chancery,* 6th ed., Inman, § 19, p. 21, and while the terms of the release are contradictory, the testimony

of the plaintiff who signed the release and the attorney representing the third party, tort feasor, clearly establishes the intent of the parties. Plaintiff testified:

Q. Mr. Newman, did you reduce the amount of your claim against the trucking company, the people who ran over you, because it wouldn't have to pay you for these medical bills?

A. No, sir, we tried to get every compensation we could out of them for the injuries that I had, and to my own personal knowledge—I don't think the company has got enough money to pay me for the injuries that I had, not necessarily because I want money, it's just that—man, I'm messed up for the rest of my life. I can't work anymore.

.     .     .     .     .

Q. But you thought it was a good agreement?

A. Yes, sir, I did.

Q. And that you got every penny that you could get out of the trucking company?

A. Well, I don't know whether we can get every penny or not.

Q. Well, you got every penny you could get by negotiation, right?

A. Yes, that's right.

The attorney for the trucking company testified:

Q. So in reaching your decision to negotiate, and what dollars you were negotiating with, you did consider, to some extent, the fact that Mr. Newman had incurred medical expenses?

A. Yes, certainly.

Q. You were successful in negotiating a settlement?

A. As you know, we negotiated what's commonly called a structured settlement, which we felt was fair and

---

2. Where an injury is alleged to be serious, it is not necessary to plead specially expenses of medical treatment since the allegation of serious injury is sufficient to apprise the defendant of the necessity of treatment and resulting expenses. *Atlantic Ice & Coal Co. v. Cameron,* 19 Tenn.App. 675, 94 S.W.2d 72 (1935).

equitable, and I assume that Mr. Meares and his client felt like it. Accordingly, we conclude the judgment should be set aside and the complaint be dismissed.

 Defendant by counter-claim seeks to recover $1,905.30 medical expenses paid for Newman by mistake. The record does not establish the time and circumstance of payment; however, there is no indication that defendant's payment was made without knowledge of the basis of the claim. We deny recovery on the basis of the general rule:

It has been said that the trend of modern authority is strongly in favor of the rule that money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered merely because the payor at the time of payment was ignorant of or mistook the law as to his liability. In other words, it is generally well settled that where a person with full knowledge of the facts voluntarily pays money under a mistake of law on a demand not legally enforceable against him, he cannot recover it in the absence of unjust enrichment, fraud, duress, or improper conduct by the payee. 79 A.L.R.3d 1113, *Health Insurer—Restitution of Payments,* § 2[a] at 1117.

We remand this cause for entry of an order of dismissal, with costs of appeal assessed one-half to each party.

PARROTT, P.J., and SANDERS, J., concur.