IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 1, 2017

## MICHELLE KAY (CLARK) LOVE v. JAMES TERRILL CLARK

**Appeal from the General Sessions Court for Loudon County**
**No. 5195       Rex Alan Dale, Judge**

_____

**No. E2017-01138-COA-R3-CV**

_____

A mother obtained a default judgment against her former spouse for child support arrearages and other amounts. At the mother's request, the trial court entered orders of income assignment to the former spouse's employers, each directing them to deduct a set amount from the former spouse's salary to satisfy the default judgment. Nearly fourteen and one-half years later, the former spouse asked the court to terminate the wage assignment, claiming the culmulative amount deducted from his income exceeded the amount of judgment plus interest. The former spouse also sought a judgment against the mother to the extent she had received more than she was entitled to under the default judgment. The mother argued that the voluntary payment doctrine barred recovery. The trial court found that the former spouse's "overpayments were made with full knowledge of the facts chargeable to him" but that they "were not voluntary payments." Accordingly, the court entered judgment against mother plus statutory post-judgment interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, J., joined. CHARLES D. SUSANO, JR., J., filed a dissenting opinion.

Jordan Long, Knoxville, Tennessee, for the appellant, Michelle Kay Love.

Robin Gunn, Knoxville, Tennessee, for the appellee, James Terrill Clark.[1]

_____

[1] After this case was submitted on briefs, we granted Mr. Clark's motion to substitute James E. Corcoran III, for Ms. Gunn, now Magistrate Gunn, as counsel for the appellee.

# OPINION

## I.

On February 10, 1992, the marriage of Michelle Kay Love, formerly Clark, and James Terrill Clark ended in divorce. Three children were born to their union, and as part of the divorce, the trial court ordered Mr. Clark to pay child support.

By mid-2001, Mr. Clark no longer had a continuing child support obligation.[2] But he owed past due child support and other amounts to Ms. Love. On June 22, 2001, the court entered a default judgment against Mr. Clark. The default judgment, which totaled $36,994.83, included amounts for child support arrearages, unreimbursed medical expenses for the children, Ms. Love's share of a lump sum severance payment resulting from Mr. Clark's early military discharge, and attorney's fees. The default judgment also specified that the amount awarded would "accrue statutory judgment interest pursuant to the laws of the State of Tennessee." And the court directed that the judgment "be paid at the rate of $130 per week . . . through the registry of [the court] along with the attendant 5% administrative fee of $6.50 per week."

As contemplated by the default judgment, the court issued a notice and order of income assignment to Mr. Clark's employer. The order directed the employer "to deduct child support from the income of your employee . . . in the amount of $130.00 per week plus the statutory administrative fee of $6.50 per week." The order also informed the employer that "[t]his income assignment is binding upon you until further notice by this Court." And it warned that, "[i]f you fail to withhold income in accordance with the provisions of this notice and order, you are liable for any amount up to the accumulated amount which should have been withheld from the income of your above referenced employee."

The court issued a total of five notices and orders of income assignment, the most recent issued in May 2006. Each of the notices and the order contained similar, if not identical, language to that quoted above. And each was signed by counsel for Ms. Love as being "approved for entry."

On December 4, 2015, Mr. Clark filed a "motion to stop income assignment and for judgment of overpayment," alleging that the garnishments of his income had continued long after the default judgment was satisfied. In response, Ms. Love invoked the voluntary payment doctrine. Under the doctrine, "[a] person cannot, either by way of

---

[2] One of the parties' children had reached the age of majority. And Mr. Clark had voluntarily surrendered his parental rights with respect to the other two.

2

setoff or counterclaim, or by direct action, recover back money which he has voluntarily paid with a full knowledge of all the facts, and without any fraud, duress or extortion although no obligation to make such payment existed." *Still v. Equitable Life Assurance Soc'y of U.S.*, 54 S.W.2d 947, 948 (Tenn. 1932) (quoting *Standard Oil Co. of La. v. Petroleum Prods. Storage Co.*, 44 S.W.2d 317, 320 (Tenn. 1931)).

Following a hearing, a transcript of which is not in the record, the trial court made findings relating to Mr. Clark's efforts to stop the wage assignments and to stay abreast of the default judgment balance. Specifically, the court found as follows:

> [Mr. Clark] did not file any pleading to terminate the garnishment of his income until the motion of December 4, 2015, nine and one-half years after the last *Notice and Order of Income Assignment* was ordered. [Mr. Clark] claimed he called the Clerk's office three times in the five years preceding the hearing to try and check on his child support payments. However, he could not remember when he called or who he had spoken to in the Clerk's office. He could not remember the questions he asked, nor any responses given by the Clerk's office. He admitted he knew the payments being taken out of his pay were sent to the Child Support Receipting Office, but offered no proof of any contact with that office. He claimed that he did not intend to pay anything more than what he owed on the judgment. However, he presented no testimony that would demonstrate to the court that he took any affirmative steps to keep himself apprised of how much he owed or had paid until the filing of his motion on December 4, 2015.
>
> . . . .
>
> [Ms. Love] testified that [Mr. Clark] had asked her at one point in time, "Do you know when the judgment will be paid in full?" She responded that [s]he[3] did not know, and that he needed to call the (Loudon County) Justice Center. She did not recall exactly when this conversation took place. She also testified that she never knew when or if the balance had been paid in full.

The court also made findings relating to when the default judgment was satisfied in which it distinguished between the child support and non-child support related components of the judgment. The court determined that the "child support related

---

[3] The context of the order, other documents in the record, and both parties' briefs all suggest that the trial court's use of the pronoun "he" was a typographical error and that "she" was intended.

judgment obligations were paid off in December 2008 (seven and one-half years after entry of Judgment)." And Mr. Clark's "non-child support judgment obligations were paid off in November, 2011 (ten years and five months after entry of Judgment)."

Based on the findings, the trial court awarded Mr. Clark a judgment against Ms. Love for $24,895.09 plus statutory post-judgment interest of 5.5% per annum until she paid the judgment in full. In its detailed final order, the court analyzed each of Ms. Love's defenses. On the application of the voluntary payment doctrine, the court made a "finding" that Mr. Clark's payments were not voluntary "in that all overpayments made were pursuant to the 2006 Order of Income Assignment." The court also found "that the 2006 Order of Income Assignment created a legal obligation to surrender those payments even though the underlying judgment had been satisfied."

**II.**

On appeal, Ms. Love raises two issues. First, she argues that Mr. Clark's overpayments were voluntary and that the trial court erred in not denying him recovery based upon the voluntary payment doctrine. Second, she argues that, if the voluntary payment doctrine does not bar Mr. Clark's recovery, the trial court erred in awarding post-judgment interest.

In non-jury cases, the trial court's findings of fact are presumed to be correct unless the evidence in the record preponderates against them. Tenn. R. App. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We review a trial court's conclusions of law under a de novo standard with no presumption of correctness attaching to the trial court's legal conclusions. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). We review mixed questions of law and fact also under a de novo standard with no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 745 (Tenn. 2002). We have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

A.

The voluntary payment doctrine is "generally well settled." *Newman v. Aluminum Co. of Am.*, 643 S.W.2d 109, 112 (Tenn. Ct. App. 1982). "[W]here a person with full knowledge of the facts voluntarily pays money under a mistake of law on a demand not legally enforceable against him, he cannot recover it in the absence of unjust enrichment,

fraud, duress, or improper conduct by the payee." *Id*. (quoting Donald M. Zupanec, Annotation, *Right of Insurer Under Health or Hospitalization Policy to Restitution of Payments Made Under Mistake*, 79 A.L.R.3d 1113, 1117 (1977)).

In this case, the trial court considered some of the elements of the voluntary payment doctrine.[4] But the application of the doctrine turned on whether the deductions from Mr. Clark's pay under court order were voluntary. The trial court "found" Mr. Clark's overpayments to be involuntary. When the facts are not in dispute, whether a payment is voluntary presents a question of law. *See City of Clarksville v. Montgomery County*, 62 S.W. 33, 36 (Tenn. Ct. Ch. App. 1901) (determining the issue on demurrer); 21 RULING CASE LAW § 167, at 144 (William M. McKinney & Burdett A. Rich eds., 1918). Otherwise, "whether the money was paid voluntarily or in consequence of compulsion or duress" is a question of fact. 21 RULING CASE LAW, *supra*, § 167, at 144; 70 C.J.S. *Payment* § 107, Westlaw (database updated Mar. 2018) ("Whether in a given case a payment is voluntary depends on whether the facts of the particular case indicate an intention on the part of the payor to waive his or her legal rights.").

When our supreme court considered the difficult question of what constitutes an involuntary payment, it spoke in terms of free will.

> From the nature of the question no very precise rules can be laid down. The very word used to describe an involuntary payment imports a payment made against the will of the person who pays. It implies that there is some fact or circumstance which overcomes the will and imposes a necessity of payment in order to escape further ills. Ordinarily it may be said duress is that degree of constraint or danger either actually inflicted or threatened and impending sufficient to overcome the mind and will of a person of ordinary firmness.

*Still*, 54 S.W.2d at 949 (quoting 21 RULING CASE LAW, *supra*, § 170, at 146). Certainly a wage assignment overcomes the will of an employee who would otherwise wish to

---

[4] The trial court found that Mr. Clark had full knowledge of the facts. Specially, the court found that he "knew the amount of the Judgment of June 2001, knew the amounts that were being garnished out of his paychecks from his paystubs, knew where the payments were going, yet he failed to keep himself informed as to remaining balance of the judgment and failed to take any action to stay the wage assignment order once the judgment was satisfied until after four years had passed from the satisfaction of the judgment." The court also touched on the issue of unjust enrichment, noting that Ms. Love "benefitted from receipt of the overpayments, and presented no proof as to how she utilized the overpayments." Ms. Love did offer testimony that she used the overpayments to support her adult children and their child, all of whom apparently still lived with her. The court did not consider whether there was fraud, duress, or improper conduct by Ms. Love.

receive all of his compensation. And as the notices and orders of income assignment in this case made clear, a wage assignment imposes a necessity of payment to escape further ills. In cases of payments compelled by court process, courts typically deem the payments involuntary. *See, e.g., Carpenter v. Carpenter*, 891 N.E.2d 587, 600 (Ind. Ct. App. 2008) ("Father's decision to pay child support via wage withholding was voluntary only in the sense that Father voluntarily complied with the law."); *Perkins v. Grobben*, 74 N.W. 469, 471 (Mich. 1898) (concluding that payment resulting from a garnishee process involuntary); *Chaker v. Chaker*, 581 A.2d 737, 743-44 (Vt. 1990) (contrasting voluntary child support payments with wage assignments). *But see White v. White*, 2009 Ark. App. 790, 2, 5 (2009) (affirming the trial court's finding that father's overpayments were voluntary because, although his employer erroneously withheld a larger amount from father's paycheck each month than ordered by the court, "it was [father's] responsibility to verify that he was making child-support payments in the correct amount" during those months).

Because the question of whether a payment is voluntary or involuntary is dependent on the facts of each case, *Still*, 54 S.W.2d at 949, all payments exacted through court process are not necessarily involuntary. A person whose assets or income are garnished or subjected to a wage assignment has some responsibility to oppose invalid process, for instance in circumstances in which no amounts are due. As one court explained in an analogous context,

> A judgment or order of court to a garnishee for the payment of money he is supposed to owe his creditor is not always such compulsory process as will protect the garnishee in a payment made thereon. It is his duty to see, as far as may be, that the judgment or order is a valid one; and if he suffer an order to be made against him by default when in fact he owed nothing, without making an effort to show that fact or to have the order set aside, a payment thereon must be regarded as voluntary.

*Ambs v. Towle*, 27 N.E. 625, 626 (Ind. App. 1891).

Turning to the unique circumstances here, we sustain the trial court's determination that the payments taken from Mr. Clark's pay were involuntary. The amount of time Mr. Clark took to seek a stop to the wage assignment is concerning. But as the court's final order made clear with its attached tables, determining when the default judgment was satisfied was not as simple as finding a calculator. The default judgment awarded interest at a statutory rate, without specifying that rate. As the trial court correctly concluded, two different statutory rates applied to the judgment. *See* Tenn. Code Ann. §§ 36-5-101(a)(5) (2001) (current version at Tenn. Code Ann. § 36-5-101(f)(1) (2017)); 47-14-121 (2001) (amended 2012). The court then determined that

6

payments from the wage assignment should be applied first to the child support arrearage, which further impacted the date the default judgment was satisfied. In addition, the proof showed some effort on the part of Mr. Clark to determine from Ms. Love and the clerk's office the status of his payments. Thus, we agree with the trial court that the voluntary payment doctrine did not apply to bar Mr. Clark's recovery.

## B.

Having determined that Mr. Clark's recovery was not barred by the voluntary payment rule, we consider the trial court's award of post-judgment interest. Ms. Love argues it was inequitable to award Mr. Clark post-judgment interest. She claims she was prejudiced by Mr. Clark's delay in acting "because he knew he was overpaying yet did nothing about it and every time he made a payment it [wa]s going to be more money that [she] w[ould] have to eventually pay back through interest."

As an initial matter, we note that the trial court found that Ms. Love "was also chargeable with full knowledge of the[ ] same facts [Mr. Clark was aware of]." The court further found "that the overpayments began and continued as a result of the inaction of both parties to keep themselves apprised of the declining balance of the Judgment and take affirmative action to end the garnishment of [Mr. Clark's] paychecks after the Judgment had been satisfied." Unlike Mr. Clark who made some inquiry regarding the outstanding balance of the judgment, Ms. Love made none. But ultimately the equities are irrelevant when it comes to post-judgment interest.

By statute, "[i]nterest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial." Tenn. Code Ann. § 47-14-122 (2013). Our supreme court interprets this language as mandatory. *Ali v. Fisher*, 145 S.W.3d 557, 565 (Tenn. 2004). And this Court previously held that "the rate of interest prescribed by statute is deemed controlling and not subject to reduction by reason of equitable considerations." *Bedwell v. Bedwell*, 774 S.W.2d 953, 956 (Tenn. Ct. App. 1989). So the trial court did not err in awarding post-judgment interest.

## III.

The trial court properly determined that the voluntary payment doctrine did not bar Mr. Clark from recovery. And the court's award of post-judgment interest was required by statute. The judgment of the trial court is affirmed.

7

_____
W. NEAL McBRAYER, JUDGE