IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 1, 2017

## MICHELLE KAY (CLARK) LOVE v. JAMES TERRILL CLARK

**Appeal from the General Sessions Court for Loudon County**
**No. 5195       Rex Alan Dale, Judge**

_____

**No. E2017-01138-COA-R3-CV**

_____

CHARLES D. SUSANO, JR., J., dissenting.

Originally, I was assigned the task of drafting an opinion in this case. I circulated my draft to the other panel judges, the Honorable W. Neal McBrayer and the Honorable Arnold B. Goldin. Judges McBrayer and Goldin do not agree with me "that the voluntary payment doctrine barred recovery." I have read the majority opinion drafted by Judge McBrayer and concurred in by Judge Goldin. I now formally dissent from that majority opinion.

In order to bring into sharp focus my differences with the majority, I now set forth the entirety of my original draft.

### I.

Michelle Kay Love, formerly Clark, obtained a default judgment against her former spouse, James Terrill Clark, in the amount of $36,994.83 for child support arrearage, among other things. The trial court entered orders of income assignment to Clark's employer, directing it to deduct $136.50 per week from Clark's salary to satisfy the default judgment. Nine and a half years later, Clark asked the trial court to terminate the garnishment of his income. Clark alleged he had overpaid Love more than $28,000 because he continued to have his income garnished for over four years after he had paid enough to satisfy the judgment. The trial court found that Clark's "overpayments were made with full knowledge of the facts chargeable to him," but that they "were not voluntary payments." The trial court entered judgment against Love in the amount of $24,895.09 plus statutory post-judgment interest. We hold that the voluntary payment

1

doctrine applies to bar the recovery of overpayments by Clark, who was guilty of "sleeping on his rights," with knowledge of all the pertinent facts, for over four years. We reverse the judgment of the trial court.

The parties were divorced on February 10, 1992. Three children were born to their union. Clark was ordered to pay child support. On June 22, 2001, the trial court entered a default judgment against Clark for unpaid child support, unreimbursed medical expenses for the children, a portion of Clark's lump sum severance pay for his early military discharge, and attorney's fees. The default judgment in Love's favor totaled $36,994.83. Pursuant to the orders of income assignment, Clark's employer began deducting $136.50 per week to satisfy the judgment. These orders informed the employer that "[t]his income assignment is binding upon you until further notice by this Court."

By mid-2001, one of the parties' children had reached the age of majority, and Clark had voluntarily surrendered his parental rights with respect to the other two. Consequently, Clark did not have a continuing child support obligation after the entry of the default judgment. This case involves only his overpayment of his arrearages as set forth in the default judgment.

On December 4, 2015, Clark filed a "motion to stop income assignment and for judgment of overpayment," alleging that the garnishments of his income had continued long after the default judgment was satisfied. In response, Love invoked the voluntary payment doctrine, which has been expressed by the Supreme Court as follows:

> A person cannot, either by way of setoff or counterclaim, or by direct action, recover back money which he has voluntarily paid with a full knowledge of all the facts, and without any fraud, duress or extortion although no obligation to make such payment existed.

*Still v. Equitable Life Assur. Soc. of U.S.*, 54 S.W.2d 947, 948 (Tenn. 1932) (quoting *Standard Oil Co. of La. v. Petroleum Prods. Storage Co.*, 44 S.W.2d 317, 320 (Tenn. 1931)).

Following a hearing, a transcript of which is not in the record, the trial court found the following pertinent facts in its final judgment:

> Clark did not file any pleading to terminate the garnishment of his income until the motion of December 4, 2015, nine and one-half years after the last [n]otice and [o]rder of [i]ncome

[a]ssignment was ordered. Clark claimed he called the Clerk's office three times in the five years preceding the hearing to try and check on his child support payments. However, he could not remember when he called or who he had spoken to in the Clerk's office. He could not remember the questions he asked, nor any responses given by the Clerk's office. He admitted he knew the payments being taken out of his pay were sent to the Child Support Receipting Office, but offered no proof of any contact with that office. He claimed that he did not intend to pay anything more than what he owed on the judgment. However, he presented no testimony that would demonstrate to the court that he took any affirmative steps to keep himself apprised of how much he owed or had paid until the filing of his motion on December 4, 2015.

\*     \*     \*

Clark was credited for payments of $80,533.64 and $58.50 in fee payments from August 27, 2001, through January 2, 2016. By stipulation of the parties, Clark was credited with an additional $760[.]

Love testified that Clark had asked her at one point in time, "Do you know when the judgment will be paid in full?" She responded that [s]he[1] did not know, and that he needed to call the (Loudon County) Justice Center. She did not recall exactly when this conversation took place. She also testified that she never knew when or if the balance had been paid in full.

\*     \*     \*

His child support related judgment obligations were paid off in December 2008 (seven and one-half years after entry of Judgment). His non-child support judgment obligations were paid off in November, 2011 (ten years and five months after

---

[1] The trial court's order states "he" did not know. However, the context of the statement in the order, other documents in the record, and both parties' briefs all suggest that this is a typographical error and the statement was intended to read that "she" did not know.

entry of Judgment). His motion was filed four years and one month after his payments satisfied the judgment.

(Term "Father" in original replaced with "Clark" throughout; "Mother" replaced with "Love"; italics in original omitted; footnote added).

On appeal, neither party disputes any of the trial court's findings of fact. The trial court's judgment contains these findings and conclusions of law:

> From the proof presented before this court, the court agrees that Clark's overpayments were made by mistake or ignorance of the law. The court also finds Clark's overpayments were made *with full knowledge of the facts chargeable to him*. All payments were made as a result of the 2006 Wage Assignment Order. *Clark knew the amount of the Judgment of June 2001, knew the amounts that were being garnished out of his paychecks from his paystubs, knew where the payments were going, yet he failed to keep himself informed as to remaining balance of the judgment and failed to take any action to stay the wage assignment order once the judgment was satisfied until after four years had passed from the satisfaction of the judgment.*
>
> The court also finds that Love was also chargeable with full knowledge of these same facts as well. . . . As a result, the court finds that the overpayments began and continued as a result of the inaction of both parties to keep themselves apprised of the declining balance of the Judgment and take affirmative action to end the garnishment of Clark's paychecks after the Judgment had been satisfied.
>
> *       *       *
>
> The court finds that Clark's overpayments were not voluntary payments, in that all overpayments made were pursuant to the 2006 Order of Income Assignment. The court also finds that the 2006 Order of Income Assignment created a legal obligation to surrender those payments even though the underlying judgment had been satisfied.

4

("Father" in original replaced with "Clark" throughout; "Mother" replaced with "Love"; emphasis added). The trial court ordered Love to pay $24,895.09 plus statutory post-judgment interest of 5.5% per annum until she paid the judgment in full. Initially, Love appealed to the Loudon County Circuit Court. By agreement of the parties, that court entered an order transferring jurisdiction of her appeal to this Court.

## II.

The issue is whether the trial court erred in ruling that Clark's overpayments were not voluntary and in ordering Love to repay the overpayments with post-judgment interest.

As previously noted, the facts found by the trial court are undisputed. We review a trial court's conclusions of law under a de novo standard with no presumption of correctness attaching to the trial court's legal conclusions. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

## III.

In *Newman v. Aluminum Co. of Amer.*, 643 S.W.2d 109, 112 (Tenn. Ct. App. 1982), this Court, applying the voluntary payment doctrine espoused by the Supreme Court in *Still*, stated as follows:

> It has been said that the trend of modern authority is strongly in favor of the rule that money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered merely because the payor at the time of payment was ignorant of or mistook the law as to his liability. In other words, it is generally well settled that where a person with full knowledge of the facts voluntarily pays money under a mistake of law on a demand not legally enforceable against him, he cannot recover it in the absence of unjust enrichment, fraud, duress, or improper conduct by the payee.

(quoting 79 A.L.R.3d 1113, *Health Insurer—Restitution of Payments*, § 2[a] at 1117). We have applied this principle to deny recovery of voluntary payments on a couple of recent occasions. *See Cole v. Caruso*, No. W2017-00487-COA-R3-CV, 2018 WL 1391625, at *6 (Tenn. Ct. App., filed Feb. 20, 2018); *Thomas v. Thomas*, No. W2016-01412-COA-R3-CV, 2017 WL 1404353, at *6 (Tenn. Ct. App., filed Apr. 4, 2017).

In the present case, there is no claim of fraud, duress, compulsion, or improper conduct by Love. Clark cites no legal authority in his brief to support his argument that his overpayments should be considered as being involuntarily made. As the trial court correctly found, Clerk knew, or is charged with knowledge of, the amount of the default judgment, the amount of his weekly payments, and that they were being automatically deducted by his employer pursuant to court order. All that he needed to do to protect his interest was to spend a few minutes with a calculator. Unfortunately for him, he did not do this until more than four years of making overpayments. We have observed that, "generally, the burden [is] on the obligor to come into court and seek any current or prospective relief to which he may be entitled, by means of a formal court order." *Corder v. Corder*, 231 S.W.3d 346, 359 (Tenn. Ct. App. 2006) (internal quotation marks omitted). Under the circumstances presented here, we are of the opinion that Clark's overpayments should be deemed voluntary.

Several equitable maxims are helpful and applicable to guide this decision. In *Lebo v. Green*, 426 S.W.2d 489, 492-93 (Tenn. 1968), the Supreme Court said:

> Gibson's Suits in Chancery, First Edition 1891, teaches us, consistent with the writings of John Norton Pomeroy, LLD., that there are certain maxims which lie at the foundation of universal justice. That these maxims are in the strictest sense the beginnings or principles out of which has developed the entire system of equity jurisprudence. One of these maxims is, 'Equity aids the vigilant, not those who sleep upon their rights'.

In *Brown v. Ogle*, 46 S.W.3d 721, 727 (Tenn. Ct. App. 2000), we stated:

> Equity never interferes in behalf of a party whose negligence, or delay, has caused, occasioned, or contributed to, the injury of which he complains. No one can take advantage of his own wrong; and *when one of two persons must suffer a loss, that one shall suffer it whose act, or neglect, occasioned it.* Clean hands, a pure heart and swift feet are required of him who seeks the aid of a Court of Conscience. If, in any case, if (sic) appears that the injury complained of might not have happened had the plaintiff, or his agents, or attorneys, been duly diligent, the Court will stay its hand and decline to interfere.

6

(Quoting William H. Inman, *Gibson's Suits in Chancery*, § 94, p. 90 (7th ed. 1988); emphasis added).  Finally, we have also observed that "[g]enerally 'where a party's remedy was "in his own hands" and he fails to protect his interest, as a general rule, neither a court of law nor equity will intervene on his behalf.' "  **Bankers Trust Co. v. Collins**, 124 S.W.3d 576, 579 (Tenn. Ct. App. 2003) (internal brackets omitted); **Leeper v. Cook**, 688 S.W.2d 94 (Tenn. Ct. App. 1985).  Under the undisputed facts of this case, both law and equity demand that Clark, not Love, should bear the consequences of his own unfortunate delay.

## IV.

The judgment of the trial court is reversed, and Clark's complaint is dismissed. Costs on appeal are assessed to the appellant, James Terrill Clark.  The case is remanded to the trial court for collection of costs below, which are also assessed to Clark.

I respectfully dissent from the majority opinion.


_____
CHARLES D. SUSANO, JR., JUDGE